Emma A. O. Bruden, OSB # 163525
KAMPMEIER & KNUTSEN PLLC
221 SE 11th Avenue, Suite 217
Portland, Oregon 97214
Telephone: (503) 719-5641
Email: emma@kampmeierknutsen.com

Paul A. Kampmeier, WSBA #31560
    *Pro hac vice application forthcoming*
KAMPMEIER & KNUTSEN PLLC
811 First Avenue, Suite 468
Seattle, Washington 98104
Telephone: (206) 858-6983
Email: paul@kampmeierknutsen.com

Maura C. Fahey, OSB # 133549
CRAG LAW CENTER
3141 E Burnside St.
Portland, Oregon 97214
Telephone: (503) 525-2722
Email: maura@crag.org

*Attorneys for Plaintiff Northwest Environmental Defense Center*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **NORTHWEST ENVIRONMENTAL DEFENSE CENTER**, an Oregon non-profit corporation, <br><br> Plaintiff, <br><br> v. <br><br> **ROSS ISLAND SAND & GRAVEL COMPANY**, an Oregon corporation <br><br> Defendant. | Case No. 3:19-cv-00961 <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES** <br><br> **(Pursuant to Clean Water Act, 33 U.S.C. § 1365(a)(1))** |

## I.    INTRODUCTION

1.    This action is a citizen suit alleging violations of the Clean Water Act ("CWA" or "Act") as amended, 33 U.S.C. § 1251 *et seq*. Defendant Ross Island Sand & Gravel Company ("Ross Island") owns and operates an industrial facility—a concrete batch plant—on the east bank of the Willamette River, just north of Ross Island Bridge in Portland, Oregon. Plaintiff Northwest Environmental Defense Center ("NEDC") alleges Defendant regularly discharges pollutants and stormwater associated with industrial activity to the Willamette River through a variety of point sources and that those discharges are illegal and in violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), because Defendant does not have a National Pollutant Discharge Elimination System ("NPDES") permit authorizing discharges of pollutants or industrial stormwater from its facility. NEDC seeks declaratory and injunctive relief, the imposition of civil penalties, and an award of costs, attorneys' fees, and expert witness fees, for Defendant's repeated and ongoing violations of the Clean Water Act.

## II.    JURISDICTION AND VENUE

2.    This Court has jurisdiction pursuant to 33 U.S.C. § 1365 (CWA citizen suit provision) and 28 U.S.C. § 1331 (federal question). Ross Island is in violation of an "effluent standard or limitation" as defined by Section 505 of the Act, 33 U.S.C. § 1365. The requested relief is proper under 28 U.S.C. §§ 2201 and 2202 and 33 U.S.C. § 1365.

3.    NEDC has satisfied the jurisdictional requirements for bringing this suit. Under Section 505(b)(1)(A) of the Act, 33 U.S.C. § 1365(b)(1)(A), by certified letter dated and postmarked April 10, 2019, NEDC notified Ross Island and its registered agent of Defendant's alleged violations of the Act and of NEDC's intent to sue for those violations ("Notice Letter").

NEDC also notified the Administrator of the Environmental Protection Agency ("EPA"), the Administrator of EPA Region 10, and the Director of the Oregon Department of Environmental Quality ("DEQ") of NEDC's intent to sue Defendant by mailing a copy of the Notice Letter to those officials on April 10, 2019. A copy of the Notice Letter is attached to this complaint as Exhibit 1 and the allegations therein are hereby incorporated by reference.

4.      More than sixty days have passed since NEDC mailed the Notice Letter and the violations complained of are continuing or reasonably likely to continue to occur. Neither the EPA nor the Oregon DEQ has commenced any action constituting diligent prosecution to redress these violations. Defendant is in ongoing violation of the Clean Water Act.

5.      Venue is appropriate in this District under Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations complained of is located in this District, in Multnomah County, Oregon.

6.      A copy of this Complaint will be served on the Attorney General of the United States, the Administrator of the EPA, and the Administrator of EPA Region 10, as required by 33 U.S.C. § 1365(c)(3) and 40 C.F.R. § 135.4.

### III.    PARTIES

7.      Plaintiff Northwest Environmental Defense Center is a membership organization suing on behalf of itself and its members. NEDC is an independent non-profit corporation organized and existing under the laws of the State of Oregon. NEDC maintains its principal place of business in Multnomah County, Oregon. Since 1969, the staff, student volunteers, and members of NEDC have advocated for cleaner water and air and for the preservation of public lands and wildlife habitat across the Pacific Northwest.

8.      The mission of NEDC is to protect and conserve the environment and natural resources of the Pacific Northwest. NEDC and its members work to conserve and protect water resources and aquatic species of the Pacific Northwest. NEDC and its members have a particular interest in, and derive aesthetic, recreational, and other benefits from, Oregon's rivers, streams, lakes, and bays, including the Willamette River, as well as the aquatic species that use and rely on those waters. NEDC's members use and enjoy the Willamette River, including waters and adjacent lands downstream from Defendant's discharges of pollutants, for recreational and other activities, including boating, fishing, nature watching, hiking, biking, aesthetic enjoyment, and other activities. Additionally, many members of NEDC live or work near the Willamette River or otherwise have an interest in the Willamette River and the aquatic species that inhabit its waters. NEDC and its members intend to continue all of these activities in the future.

9.      NEDC has standing to bring this lawsuit. NEDC and its members are "citizens" as defined by Section 505(g) of the Act, 33 U.S.C. § 1365(g). NEDC has at least one member who is injured by Defendant's discharges of pollutants and industrial stormwater and violations of the CWA. Recreational, economic, aesthetic, conservation, health and/or other interests of NEDC and its members have been, are being, and will be adversely affected by Defendant's violations of the Clean Water Act and unauthorized discharges of pollutants and industrial stormwater to the Willamette River. NEDC's and its members' interests in the Willamette River are diminished by their polluted state and by Defendant's illegal discharge of pollutants, process wastewater, industrial stormwater, and other violations of the CWA. The relief sought in this lawsuit can redress the injuries to NEDC and NEDC's members' interests.

10.     Defendant Ross Island Sand & Gravel Company is a corporation organized and existing under the laws of the State of Oregon. Defendant owns and operates an industrial facility

COMPLAINT – 4

or concrete batch plant at or near 2611 S.E. 4th Avenue, Portland, Oregon 97202 (hereinafter "Facility"). Defendant's Facility is on land adjacent to the Willamette River. Defendant's Facility discharges pollutants, process wastewater, and stormwater associated with industrial activity via point sources to the Willamette River.

## IV.    LEGAL BACKGROUND

11.    Congress enacted the Clean Water Act to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

12.    As relevant here, Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits "the discharge of any pollutant by any person" unless such discharge is authorized by an NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

13.    The Act defines the term "discharge of a pollutant" to mean, in part, "any addition of any pollutant to navigable waters from any point source . . . ." 33 U.S.C. § 1362(12).

14.    The Act defines the term "point source" to mean, in part, "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged. * * *." 33 U.S.C. § 1362(14).

15.    The Act defines the term "pollutant" to mean, in part, "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water. * * *." 33 U.S.C. § 1362(6).

16.    The Act's prohibition on discharging pollutants from point sources applies broadly. The Act defines the term "navigable waters" to mean "the waters of the United States,

including the territorial seas." 33 U.S.C. § 1362(7). And the Act defines the term "person" to

mean "an individual, corporation, partnership, association, State, municipality, commission, or

political subdivision of a State, or any interstate body." 33 U.S.C. § 1362(5).

17.     The Act also regulates and requires an NPDES permit for stormwater discharges

"associated with industrial activity." 33 U.S.C. §§ 1342(p)(2)(B), (p)(3)(A). EPA regulations de-

fine the term "stormwater discharge associated with industrial activity" in part to mean "the dis-

charge from any conveyance that is used for collecting and conveying storm water and that is di-

rectly related to manufacturing, processing or raw materials storage areas at an industrial plant."

40 C.F.R. § 122.26(b)(14). EPA's stormwater regulation requires facilities classified within

Standard Industrial Classifications ("SIC") 3272 (Concrete Products, Except Block and Brick),

3273 (Ready-Mixed Concrete), and 3295 (Minerals and Earths, Ground or Otherwise Treated) to

obtain and comply with an NPDES permit. *Id*. § 122.26(a), (b)(14)(ii). The stormwater regula-

tion also requires NPDES permits for stormwater discharges from "areas where industrial activ-

ity has taken place in the past and significant materials remain and are exposed to stormwater."

*Id*. § 122.26(b)(14).

18.     Section 402(a) of the Act empowers EPA or an authorized state to issue NPDES

permits authorizing discharges of pollutants. 33 U.S.C. § 1342(a). The State of Oregon has estab-

lished a federally-approved state NPDES program administered by the Oregon Department of

Environmental Quality. Accordingly, the Oregon Department of Environmental Quality may is-

sue NPDES permits authorizing discharges of pollutants and industrial stormwater. Compliance

with the terms and conditions of an NPDES permit is deemed compliance with the general dis-

charge prohibition in Section 301(a). 33 U.S.C. § 1342(k). Discharges of pollutants or industrial

stormwater that are not authorized by an NPDES permit violate the CWA and are grounds for a

citizen enforcement action. 33 U.S.C. §§ 1311(a), 1365(a)(1), (f)(1).

## V.    FACTS

19.    Defendant conducts and has conducted industrial activities at the Facility, including manufacturing dry and wet concrete and other products; moving, sorting, and storing industrial materials like gravel, sand, roofing granules, and aggregate; vehicle and equipment fueling; and washing equipment, including trucks. Defendant routes, controls, conveys, and collects stormwater that falls at the Facility using a comprehensive stormwater management system that includes grading, berms, curbs, drains, pipes, ditches, channels, hoses, pumps, and other man-made conveyances.

20.    In addition to stormwater, Defendant engages and has engaged in activities that result in discharging other pollutants through process water, wash water, or other waters to various storm drains and settling basins at and surrounding the Facility. For example, Defendant has washed trucks and equipment at the Facility, and the wash water from the washes discharges pollutants into the Willamette River.

21.    On information and belief, Defendant's stormwater, process water, waste water, and other discharges from the Facility contain pollutants commonly associated with industrial activities, including but not limited to sand, dirt, copper, zinc, heavy metals, oil and grease, process water, waste water, total suspended solids, calcium carbonate, other metals, heat, and elevated pH levels.

22.    As the image below shows, Defendant's Facility has several drainage areas. This image shows Defendant's depiction of drainage areas at the Facility, but Plaintiff and the Portland Bureau of Environmental Services dispute that this image accurately and completely depicts the drainage areas and the Facility. For example, the map does not show where stormwater

drains from certain areas, such as the roof of the dry-mix material storage warehouse.



23.    At the Facility, industrial stormwater and pollutants flow through pipes and other

manmade conveyances into retention and settling basins. At the Facility, industrial stormwater

and pollutants drain to pervious areas under sand piles where it infiltrates. At the Facility, indus-

trial stormwater and pollutants are captured by catch basins or grated drains and applied to material stockpiles. At the Facility, industrial stormwater and pollutants flow from the cite entrance north along SE Fourth Avenue to a catch basin located at the intersection of SE Fourth Avenue and SE Division Place, which ultimately drains to the Willamette River. At the Facility, industrial stormwater and pollutants flow directly into the Willamette River.

24.     Defendant exposes stormwater at the Facility to industrial activity. The stormwater may contain pollutants associated with materials storage and concrete manufacturing, including suspended solids, aluminum, lead, arsenic, cadmium, chromium, mercury, other heavy metals, and oil and grease. Using pipes and other manmade conveyances, Defendant also collects and routes process water, wash water, or other waters with pollutants and elevated pH values. Defendant discharges pollutants and stormwater associated with industrial activity from numerous point sources into the Willamette River.

25.     For example, Defendant discharges pollutants and industrial stormwater from the settling basins to the Willamette River through at least four means. First, Defendant discharges through pipes, hoses, ditches, channels, and other conveyances, including the settling basins themselves and through overflow from the settling basins. These discharges occurred and continue to occur, including on April 30, 2008, February 24, 2016, February 29, 2016, April 4, 2017, February 12, 2019, and every other day that Defendant uses or used such conveyances and the water and materials then traveled to the Willamette River. Second, Defendant discharges through leaks in at least one of the settling basins, which have fractures along the walls of the basins and well-defined discharge channels to the Willamette River. These discharges occurred and continue to occur on February 29, 2016, March 11, 2016, October 20, 2017, and every other day Defendant stores water and materials in the settling basins. Third, because leakage from the settling

COMPLAINT – 9

basins, concrete basins, and possibly other activities has left a residue of materials and pollutants at the Facility and the banks of the Willamette River, Defendant discharges to the Willamette River when precipitation lands on those areas and moves some of that residue to the Willamette River. These discharges occurred and continue to occur every day on which more than 0.1 inches of precipitation falls or fell on the Facility. Fourth, Defendant discharges through pipes, hoses, and sprinklers to distribute the stormwater and pollutants in the settling ponds onto materials, areas, and aggregate piles in a manner that results in surface discharges to the Willamette River. These discharges occurred and continue to occur every day Defendant distributes water collected in the settling basins in a manner that results in surface flow to the Willamette River.

26.    As another example, Defendant discharges and has discharged stormwater associated with industrial activity into the City of Portland storm drain at the catch basin located at the intersection of SE Fourth Avenue and SE Division Place every day on which more than 0.1 inches of precipitation falls or fell at the Facility, including on April 28, 2018. Defendant also discharges and has discharged pollutants into the City of Portland storm drain at the catch basin located at the intersection of SE Fourth Avenue and SE Division Place on February 22, 2016, May 22, 2016, and every day that Defendant's actions resulted in process water, wash water, or other waters or pollutants being routed and channeled into that drain.

27.    As another example, Defendant moves, stores, and processes rock, sand, and other aggregate materials, which are uncovered. These activities and materials are exposed to stormwater and Defendant's sprinklers and pipes. The stormwater and other waters pick up pollutants like total suspended solids and sand. Defendant discharges this stormwater and water with pollutants to the Willamette River through the piles of materials, sprinklers, pipes, hoses, industrial equipment, and any other ditches or channels used for or resulting from drainage at the Facility.

28.     As another example, Defendant discharges pollutants and stormwater associated with industrial activity to the Willamette River from a leaking industrial hopper and from Tunnel Five, which collects and conveys pollutants and industrial stormwater and discharges to the Willamette River. Defendant discharges pollutants and industrial stormwater to the Willamette River from Tunnel Five and the leaking industrial hopper every day on which more than 0.1 inches of precipitation fell at the Facility from April 20, 2014 until October 27, 2017. If Tunnel Five or the industrial hopper are still discharging to the Willamette River, then these activities and violations are ongoing or reasonably likely to recur. Defendant uses barges, cranes, docks, and related equipment to transport materials, such as aggregate, sand, or roofing granules, to and from the Facility, and some of the materials and other pollutants fall directly into the Willamette River. Discharges of pollutants occurred on March 11, 2016; every day that Defendant moved or transferred materials at, to, or from the Facility; and every day that pollutants previously deposited in the river remain there. Further, discharges of industrial stormwater from the barges, docks, and other equipment occurred and are occurring every day on which more than 0.1 inches of precipitation falls or fell at the Facility.

29.     To the best of Plaintiff's knowledge, the activities and violations discussed herein are ongoing or reasonably likely to recur.

30.     Defendant's stormwater discharges at the Facility are stormwater discharges associated with industrial activities. The Facility is classified within SIC 3272. Defendant manufactures or manufactured concrete products from a combination of cement and aggregate at the Facility. The Facility is classified within SIC 3273. Defendant manufactures or manufactured portland cement concrete manufactured and delivered to a purchaser in a plastic and unhardened state. Defendant produces or produced and sells or sold at least one of the following: central-

mixed concrete, shrink-mixed concrete, or truck-mixed concrete. The Facility is classified within SIC 3295. Defendant operates or operated without a mine quarry and primarily engages or engaged in crushing, grinding, pulverizing, or otherwise preparing clay, ceramic, and refractory minerals; barite; miscellaneous nonmetallic minerals; or slag and preparing roofing granules.

31.    Defendant's stormwater discharges are directly related to manufacturing, processing, and/or raw materials storage areas at the Facility. For example, Defendant stores piles of raw materials like gravel, sand, and aggregate. Further it manufactures and processes those raw materials to produce concrete. As described above, the stormwater Defendant discharges is exposed to that manufacturing, processing, and storing of raw materials throughout the Facility.

32.    At the Facility, Defendant discharges stormwater from an industrial plant yard. Through various manners, Defendant discharges stormwater that flows through the Facility, including through stockpiles of aggregate, sand, and other materials, and through equipment and trucks Defendant uses for manufacturing, processing, and transporting concrete. At the Facility, Defendant discharges stormwater from immediate access roads that are used or traveled by carriers of raw materials, manufactured products, waste materials, or byproducts used or created at the Facility. For example, Defendant routes stormwater runoff that flows through its access road that it uses to transport concrete and other materials to a City of Portland storm drain that discharges into the Willamette River.

33.    At the Facility, Defendant discharges stormwater from material handling sites and stormwater from sites used for the storage and maintenance of material handling equipment. For example, Defendant stores, loads, unloads, and transports raw materials, including gravel, sand, and aggregate, and the final product, cement, throughout the Facility. Stormwater flows through these sites, and Defendant collects and discharges that stormwater. At the Facility, Defendant

discharges stormwater from sites used for the application or disposal of process waste water. For example, Defendant washes trucks in at the Facility, and Defendant routes that process waste water to a City of Portland storm drain that discharges into the Willamette River. At the Facility, Defendant discharges stormwater from sites used for residual treatment, storage, or disposal. For example, Defendant routes stormwater to settling basins and pumps that stormwater onto piles of rock, sand, and other materials. Defendant also uses stormwater from the settling basins to make wet concrete. Defendant discharges at least some of that stormwater used for residual treatment, storage, and disposal into the Willamette River through a variety of means.

34.     At the Facility, Defendant discharges stormwater from shipping and receiving areas. For example, the Facility contains docks where Defendant unloads deliveries of aggregate. Defendant discharges stormwater from the docks, barges, and related equipment directly to the Willamette River. At the Facility, Defendant discharges stormwater from storage areas for raw materials, and intermediate, and final products. For example, Defendant stores gravel, sand, and aggregate at sites throughout the Facility. Stormwater flows through these sites, and Defendant collects and discharges that stormwater.

35.     At the Facility, Defendant discharges stormwater from areas where industrial activity has taken place in the past and significant materials remain and are exposed to stormwater. Irrespective of whether Defendant continues to manufacture, transport, stockpile, or otherwise conduct industrial activities at the Facility, Defendant has conducted industrial activities at the Facility for several years, and materials related to this process—including stockpiles, trucks, and equipment—remain on site and are exposed to stormwater.

36.     On or about November 1, 2017, Defendant applied for a 1200-A NPDES permit,

COMPLAINT – 13

which is a permit that applied to industries that conduct sand and gravel and batch plant opera-

tions. That permit expired on or about December 3, 2017. At all times that Defendant has owned

the Facility, Defendant has owned and operated the Facility without an NPDES permit that au-

thorizes any discharges under the Clean Water Act.

37.     Defendant's unpermitted discharges of pollutants and stormwater associated with

industrial activity to the Willamette River degrade the environment and the water quality of the

Willamette River. Defendant's unpermitted discharges of pollutants and stormwater associated

with industrial activity foul the water in and around the Willamette River where NEDC's mem-

bers live, work, recreate, fish, and engage in other activities.

38.     Defendant's unpermitted discharges of pollutants and stormwater associated with

industrial activity to the Willamette River were avoidable had Defendant been diligent in over-

seeing and controlling operations, maintenance, monitoring, and compliance with the law.

39.     Defendant has benefitted economically from its unpermitted discharges of pollu-

tants.

40.     Any and all additional violations of the Clean Water Act by Defendant that occur

or are discovered after those described in the Notice Letter but before a final decision in this ac-

tion are continuing violations subject to this complaint.

41.     Without the imposition of appropriate civil penalties and/or the issuance of an in-

junction and other relief, Defendant is likely to continue to violate the Clean Water Act to the

further injury of Plaintiff, its members, and others.

## VI.     CAUSE OF ACTION

42.     Plaintiff hereby alleges and incorporates by reference all of the preceding para-

graphs.

43.     Defendant Ross Island Sand & Gravel Company is a "person" within the meaning of Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a), and is subject to suit under the Act's citizen suit provision, 33 U.S.C. § 1365.

44.     Defendant Ross Island Sand & Gravel Company has violated and is violating Sections 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and an "effluent standard or limitation" as that term is defined by Section 505 of the Act, 33 U.S.C. § 1365, by discharging pollutants from point sources at its Facility to the Willamette River without an NPDES permit. These violations are ongoing, are described in the Notice Letter, and are hereby incorporated by reference as if fully set forth herein. *See* Exhibit 1.

45.     Additionally, Defendant Ross Island Sand & Gravel Company has violated and is violating Sections 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and an "effluent standard or limitation" as that term is defined by Section 505 of the Act, 33 U.S.C. § 1365, by discharging stormwater associated with industrial activity from point sources at its Facility to the Willamette River without an NPDES permit. These violations have occurred and will continue to occur each and every day that more than 0.1 inches of precipitation has fallen or will fall on the Facility site since April 20, 2014.

## VII.    RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

A.     Declare that Defendant has violated and continues to be in violation of the Clean Water Act, as alleged herein;

B.     Issue injunctive relief requiring Defendant to comply with the CWA, apply for an NPDES permit authorizing discharges of pollutants, process wastewater and/or industrial stormwater from Defendant's Facility, or to cease making such discharges;

C.      Issue injunctive relief requiring Defendant to remediate the environmental dam-age and ongoing impacts resulting from its illegal discharges of pollutants to the Willamette River;

D.      Order Defendant to develop and comply with appropriate quality assurance proce-dures to ensure future compliance with the Clean Water Act;

E.      Order Defendant to provide NEDC with copies of all reports and other documents that Defendant submits to EPA, the Oregon Department of Environmental Quality, or the Port-land Bureau of Environmental Services regarding discharges of pollutants from Defendant's Fa-cility, at the time the reports or documents are submitted to those authorities, for two years after completion of this case;

F.      Order Defendant to pay civil penalties pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19;

G.      Award NEDC its litigation expenses, including reasonable attorneys' and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

H.      Award such other relief as this Court deems appropriate.


RESPECTFULLY SUBMITTED this 19th day of June 2019.

KAMPMEIER & KNUTSEN PLLC

By: s/ Emma Bruden
     Emma A. O. Bruden, OSB # 163525
221 SE 11th Avenue, Suite 217
Portland, Oregon 97214
Telephone:(503) 719-5641
Email: emma@kampmeierknutsen.com

*Attorneys for Plaintiff Northwest Environmental Defense Center*

# Exhibit 1



Maura C. Fahey
*Staff Attorney*
503.525.2722 | maura@crag.org

April 10, 2019

*Via Certified Mail - Return Receipt Requested*

Managing Agent
Ross Island Sand & Gravel Co.
4315 S.E. McLoughlin Boulevard
Portland, Oregon 97202

Mr. Randall H. Steed, President
Ross Island Sand & Gravel Co.
P.O. Box 82249
Portland, Oregon 97282

Managing Agent
Ross Island Sand & Gravel Co.
Tait Plant
2611 S.E. 4th Avenue
Portland, Oregon 97202

**Re:    Notice of Intent to File Suit for Alleged Violations of the Clean Water Act**

Dear Managing Agent:

This letter provides Ross Island Sand & Gravel Co. (hereinafter "RISG") with sixty days' notice of the Northwest Environmental Defense Center's intent to file a citizen lawsuit against RISG under Section 505 of the Clean Water Act, 33 U.S.C. §1365, for alleged violations of the Clean Water Act that are described in this letter and occurring at RISG's facility at or near 2611 S.E. 4th Avenue, Portland, Oregon 97202 (hereinafter "facility"). RISG is responsible for the alleged violations described herein because RISG owns and/or operates the facility.

The Northwest Environmental Defense Center ("NEDC") is an independent non-profit organization working to protect the environment and natural resources of the Pacific Northwest. NEDC is committed to improving water, land, and air quality through various programs including public education, volunteer water quality monitoring, and advocacy for and enforcement of strong environmental protection laws. Crag Law Center and Kampmeier & Knutsen PLLC represent NEDC in this matter and any response to this notice of intent to sue should be directed to us at the addresses listed below.

## I.    THE CLEAN WATER ACT

Congress enacted the Clean Water Act ("CWA" or "Act") in 1948 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. §1251(a). In doing so, Congress declared a national goal of eliminating "discharges of pollutants" to navigable waters by 1985. To effect that policy, and as relevant here, Section 301(a) of the Act prohibits discharges of pollutants unless they are in compliance with a National Pollutant Discharge Elimination System ("NPDES") permit issued by the U.S. Environmental Protection Agency ("EPA") or an authorized state. *See* 33 U.S.C. §§ 1311(a), 1342.

The CWA defines the term "discharge of a pollutant" in part as "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). The Act defines the term "point source" as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." *Id.* § 1362(14). And the Act defines the term "pollutant" to include "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial…waste discharged into water." *Id.* § 1362(6).

Similarly, but separately, "stormwater discharges associated with industrial activity" that are not authorized by an NPDES permit also violate Section 301(a) of the Act. *See id.* §§ 1311(a), 1342(p)(3)(A). EPA has defined the term "stormwater discharge associated with industrial activity" to include stormwater discharges associated with concrete operations categorized in Standard Industrial Classifications ("SIC") 3273 and 3272, as well as facilities in SIC code 3295. *See* 40 C.F.R. § 122.26(b)(14). The term also covers and requires NPDES permits for facilities like RISG's that manufacture, transport, or stockpile sand, gravel, aggregate, wet concrete, dry concrete, or similar materials, or products manufactured with those materials, irrespective of whether the facility is currently producing concrete, because such facilities are included within other SIC codes listed in EPA's stormwater rule *and* because the term "stormwater discharge associated with industrial activity" includes "areas where industrial activity has taken place in the past and significant materials remain and are exposed to storm water." *Id.* Discharges of pollutants and industrial stormwater from the facility that are not authorized by an NPDES permit are illegal and in violation of the CWA even if routed to City of Portland storm drains. *See, e.g.*, 40 C.F.R. §§ 122.26(a)(2), (a)(3)(iii), (4).

## II.    ALLEGED VIOLATIONS OF THE CLEAN WATER ACT BY RISG

NEDC hereby alleges that RISG has violated and is violating Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), by discharging pollutants and stormwater associated with industrial activity from point sources at RISG's facility at or near 2611 S.E. 4th Avenue, Portland, Oregon 97202 (hereinafter "facility") to the Willamette River without authorization of an NPDES permit. RISG is in ongoing violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a), which is an "effluent standard or limitation" as that term is used in the CWA. *See* 33 U.S.C. §§ 1365(a)(1), (f). Any and all discharges of pollutants from the facility are unpermitted and so unlawful under the CWA. Additionally, because RISG conducts industrial activities at the

facility—including manufacturing dry and wet concrete and other products, moving, sorting, and storing industrial materials like gravel, sand, roofing granules, and aggregate, vehicle and equipment fueling, and washing equipment including trucks—any stormwater discharged from the facility, whether polluted or not, is exposed to industrial activity and so is a "stormwater discharge associated with industrial activity" that is unlawful if not authorized by an NPDES permit.

All stormwater discharges from the facility are from point sources because the facility routes, controls, conveys, and collects stormwater using a comprehensive stormwater management system that includes grading, berms, curbs, drains, pipes, ditches, channels, hoses, pumps, and other man-made conveyances. As explained in RISG's November 3, 2017 Stormwater Pollution Control Plan, stormwater from Drainage Area 1 at the facility flows to the southern end of the site, where it is collected by a series of retention and settling basins; stormwater from Drainage Areas 3 and 4 is captured by either catch basins or grated drains; Drainage Area 5 is graded such that all stormwater runoff from the site entrance and the vicinity of the dry-mix material warehouse flows north along S.E. 4th Avenue to a catch basin located at the intersection of S.E. 4th Avenue and S.E. Division Place; and stormwater at Drainage Area 6 is routed into the Willamette River. Because of RISG's comprehensive and longstanding stormwater management at the facility, any addition of stormwater from the facility to the Willamette River is a point source discharge, not nonpoint source runoff from the facility.

Unfortunately, stormwater, process water, waste water, and other discharges from the facility almost certainly contain pollutants commonly associated with industrial activities, including but not limited to sand, dirt, copper, zinc, heavy metals, oil and grease, process water, waste water, total suspended solids, calcium carbonate, other metals, heat, and elevated pH levels. Trucks and heavy equipment and their tires are potential sources of zinc, copper, and other metals; leaks from trucks and fuel spills are a potential source of oil and grease; stormwater exposed to aggregate materials is a potential source of total suspended solids, calcium carbonate, and settleable solids in stormwater; building roofs at the facility are a potential source of zinc and other pollutants; and uncured concrete and concrete washout are a potential source of elevated pH.

The alleged violations of the Act at the facility are described herein and are ongoing. Information concerning the specific dates of violations, pollutant amounts, and exact or approximate locations of the discharges since 2014 is in the possession of RISG and largely unavailable to NEDC; consequently, below we describe the nature of the discharges with as much specificity as possible to notify RISG of the violations being alleged and to give RISG an opportunity to comply with the CWA during the notice period, rendering a lawsuit unnecessary. That said, however, NEDC hereby notifies RISG that any point source discharge of pollutants or industrial stormwater from the facility violates Section 301(a) of the CWA and NEDC intends to sue for all such violations occurring at the site whether or not specifically described herein.

//

//

A.    Discharges of Pollutants and Stormwater Associated with Industrial Activity
Documented by State Agencies.

The State of Oregon and City of Portland have both documented discharges of pollutants and industrial stormwater from the facility that violate the Clean Water Act. First, RISG violated Section 301(a) of the Act on February 29, 2016, by discharging pollutants and industrial stormwater to the Willamette River from a PVC pipe draining settling basins at the south end of the facility; from another part of the settling basins at the facility; from a concrete basin near the settling basins, which was discharging cement slurry or something similar to the river; via leakage from the settling ponds and concrete basins at the facility; and from a holding basin near the settling ponds that is made of jersey barriers and that allowed materials and water in the basin to leak out and down to the Willamette River.

Second, RISG violated Section 301(a) of the Act on October 20, 2017, by discharging pollutants and industrial stormwater to the Willamette River from Tunnel Five through a pipe to the Willamette River; via leaks in an industrial hopper; via seeping and leaking through the containment wall of settling basin three; via flow from the facility entrance area to the City of Portland storm drain north of the facility on S.E. 4th Avenue at or near the intersection of S.E. 4th Avenue and S.E. Division Place; and via flow from gravel and sand piles north of the crane and flowing southwest to the Willamette River.

B.    Discharges of Pollutants and Stormwater Associated with Industrial Activity to
the Willamette River Via the City of Portland Storm Drain.

RISG violated and is violating Section 301(a) of the Act, 33 U.S.C. § 1311(a), by discharging pollutants and stormwater associated with industrial activity from the facility to a City of Portland storm drain north of the facility on S.E. 4th Avenue at or near the intersection of S.E. 4th Avenue and S.E. Division Place. The City storm drain at this location ultimately drains to the Willamette River, most likely at City outfall number 31, so all discharges of pollutants and industrial stormwater from the facility to this storm drain constitute illegal discharges by RISG to the Willamette River. Illegal discharges of stormwater associated with industrial activity from the facility to the storm drain occurred on April 28, 2018 and on every day since April 10, 2014 on which more than 0.1 inches of precipitation falls or fell at the facility. In addition to stormwater discharges, illegal discharges of pollutants to the storm drain occurred on February 22, 2016, May 25, 2016, and occurred and are occurring every day that RISG washed trucks or equipment or took other actions that result in process water, wash water, or other waters or pollutants being routed and channeled to the storm drain or to any other storm drain. Discharges of pollutants and industrial stormwater to the storm drain described in this paragraph and the Willamette River are ongoing, unpermitted, and in violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a).

C.    Discharges of Pollutants and Stormwater Associated with Industrial Activity from
RISG's Settling Ponds to the Willamette River.

RISG also violated and is violating Section 301(a) of the Act, 33 U.S.C. § 1311(a), by discharging pollutants and stormwater associated with industrial activity from settling ponds at

the facility to the Willamette River. RISG's facility has settling basins, or sumps, on the southern end of the facility, located adjacent to and just uphill from the Willamette River. Using pipes and other manmade conveyances, these settling basins collect industrial stormwater from the site and also collect wastewater from truck washing and other activities at the facility.

Stormwater collected in the sumps is exposed to industrial activities at the facility and also almost certainly polluted with several pollutants often associated with materials storage and concrete manufacturing, including suspended solids, aluminum, lead, arsenic, cadmium, chromium, mercury, other heavy metals, and oil and grease. Additionally, wastewater collected in the sumps from washing concrete trucks or manufacturing concrete almost certainly has elevated pH values. Accordingly, any discharge from the settling ponds to the Willamette River will contain pollutants and stormwater associated with industrial activity.

RISG violated and is violating Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), by discharging pollutants and industrial stormwater from the settling ponds to the Willamette River in at least four ways. First, RISG uses pipes, hoses, ditches, channels, and other conveyances, including the settling ponds themselves, to discharge pollutants and industrial stormwater from the settling ponds to the Willamette River. These kinds of discharges occurred on April 30, 2008, February 24, 2016, February 29, 2016, April 4, 2017, February 12, 2019, and on every day that RISG uses or used pipes, hoses and other conveyances to move some or all of the water and materials in the settling ponds out of the ponds and onto the adjacent ground, including when the settling ponds overflowed, where the water or pollutants then travel to the Willamette River. These violations are ongoing.

Second, RISG discharges pollutants and industrial stormwater to the Willamette River via leaks in the settling ponds. On February 29, 2016, DEQ inspector Michael Kennedy visited the site and observed fractures along the walls of the settling basins where wastewater was seeping through, as well as a well-defined discharge channel from the settling basins to the Willamette River. On October 20, 2017, DEQ and City of Portland Bureau of Environmental Services ("BES") again inspected the facility and confirmed that water collected in the settling basins continued to leak from the walls of settling basin 3. Evidence available to NEDC, including an administrative order from DEQ, indicates that RISG has not mended the cracks in the outer walls of settling basin three.

RISG has violated and is violating Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), by discharging pollutants and industrial stormwater from the settling ponds to the Willamette River via leaks every day since April 10, 2014 that the settling basins have stored water. Leaks from the settling ponds to the Willamette River violate the CWA whether the stormwater or pollutants travel over land to the river or percolate into the ground or groundwater before reaching the river. *See Hawai'i Wildlife Fund v. County of Maui*, 886 F.3d 737 (9th Cir. 2018). These kinds of discharges occurred on February 29, 2016, March 11, 2016, October 20, 2017, and occurred and are occurring every day since April 10, 2014 on which RISG stored water in the settling basins. These violations are ongoing.

Third, because leakage from the settling basins, nearby concrete basins, and possibly other activities has left a residue of materials and pollutants outside the settling basins on RISG

property and the banks of the Willamette River, and because precipitation landing on those areas will or may move some of that residue to the Willamette River, RISG has violated and is violating Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), by discharging pollutants and industrial stormwater to the Willamette River every day since April 10, 2014 on which more than 0.1 inches of precipitation falls or fell at the facility. These violations are ongoing.

Fourth, RISG violated and is violating Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), by using pipes, hoses, and sprinklers to distribute industrial stormwater and pollutants in the settling ponds onto materials, areas, and aggregate piles, including to Drainage Area 6 at the facility, in a manner that results in surface discharges to the Willamette River. NEDC alleges these discharges occurred and are occurring every day that RISG distributed water collected in the settling basins at the facility using sprinklers or hoses in a manner that resulted in surface flow to the Willamette River. The exact dates on which RISG caused its sprinklers to discharge to the Willamette River are unknown to NEDC but known to RISG. These violations are ongoing.

D.    Discharges of Pollutants and Stormwater Associated with Industrial Activity to the Willamette River from Other Conveyances at the Facility.

RISG also violated and is violating Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), by discharging pollutants and industrial stormwater from other conveyances at the facility to the Willamette River. RISG has claimed that it collects and reuses all stormwater and wastewater generated at the facility; however, information available to NEDC strongly suggests that is highly unlikely and that RISG in fact regularly discharges pollutants and industrial stormwater from numerous point sources at the facility, including channels on aggregate piles, leaking equipment such as industrial hoppers, tunnels, hoses, pipes, ditches, and channels.

For example, RISG violated Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), by discharging pollutants and stormwater associated with industrial activity to the Willamette River from Tunnel Five and from a leaking industrial hopper at the facility. Tunnel Five collects and conveys pollutants and industrial stormwater to WR-548, which discharges to the Willamette River. According to DEQ's report of its October 20, 2017 inspection of the facility, the leaking industrial hopper also discharged to the Willamette River. RISG violated Section 301(a) of the Act by discharging pollutants and industrial stormwater to the Willamette River from Tunnel Five and the leaking industrial hopper every day on which more than 0.1 inches of precipitation fell at the facility from April 10, 2014 until October 27, 2017. If Tunnel Five and/or the industrial hopper identified in DEQ's report are still discharging to the Willamette River, then these violations are ongoing and in violation of Section 301(a) of the CWA.

As another example, RISG discharges pollutants and industrial stormwater to the Willamette River from point sources in or near the area identified as "Drainage Area 6" in RISG's NPDES permit application. RISG uses Drainage Area 6 to move, store, and process rock, sand, and other aggregate materials. These materials are not covered or under any roof so all activities and materials at that part of the facility are exposed to stormwater. Additionally, RISG uses sprinklers and pipes to add water to the areas where it stores piles of materials at the site, making stormwater discharges from this area all the more likely. Stormwater and other waters

exposed to the piles of materials and industrial activities at the site necessarily pick up pollutants including total suspended solids and sand. And the piles of materials, sprinklers, pipes, hoses, industrial equipment, and any ditches or channels that are used for or result from drainage at the site are point sources. *See* 33 U.S.C. § 1362(14), 40 C.F.R. § 122.2. RISG violated and is violating Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), by discharging pollutants and industrial stormwater from Drainage Area 6 to the Willamette River on every day since April 10, 2014 on which more than 0.1 inches of precipitation fell or falls at the facility. These violations are ongoing.

The limited information available to NEDC indicates RISG may also be violating Section 301(a) of the CWA by discharging pollutants and industrial stormwater to the Willamette River from other point sources at the facility, including from two stormwater outfalls on the west side of the property, as well as from a drain leading to an underground pipe at the north end of the facility that then conveys pollutants and industrial stormwater to a City of Portland storm drain. As previously explained, because information regarding the locations of any other point sources is available to or known by RISG, but not available to NEDC, NEDC hereby notifies RISG that any point source discharge of pollutants or industrial stormwater from the facility violates Section 301(a) of the CWA and NEDC intends to sue for all such violations occurring at the site whether or not specifically described herein.

E.   Discharges of Pollutants and Stormwater Associated with Industrial Activity to the Willamette River from Barges, Cranes, Docks, and Related Equipment.

RISG also violated and is violating Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), by discharging industrial stormwater and pollutants, including sand, rock, roofing granules, aggregate, and other materials produced at or transported to or from the facility, to the Willamette River from the facility grounds, barges located at the facility, and/or the crane, the dock, and the material loading and unloading activities that occur on the west side of the facility. The facility grounds, barge, crane, dock, and any related equipment and activities are point sources and any materials discharged from those machines, areas, or activities are pollutants. Discharges of pollutants from these areas and activities occurred on March 11, 2016, on every day since April 10, 2014 that RISG moved or transferred materials at the facility or from a barge, vessel, or piece of equipment to the facility, and on every day since April 10, 2014 that pollutants previously deposited into the river remain there. Additionally, unpermitted discharges of industrial stormwater from barges at the facility and from these activities and areas occurred and are occurring every day since April 10, 2014 that more than 0.1 inches of precipitation falls at the facility. These violations are ongoing.

## III.    PARTY GIVING NOTICE

The full name, address, and telephone number of the party giving this notice is:

Northwest Environmental Defense Center
10015 S.W. Terwilliger Boulevard
Portland, Oregon 97219
Telephone: (503) 768-6673

## IV.    ATTORNEYS REPRESENTING NEDC

The attorneys representing NEDC in this matter are:

| | |
|---|---|
| Maura Fahey | Paul Kampmeier |
| Crag Law Center | Kampmeier & Knutsen PLLC |
| 3141 E Burnside Street | 811 First Avenue, Suite 468 |
| Portland, Oregon 97214 | Seattle, Washington 98104 |
| Telephone: (503) 525-2722 | Telephone: (206) 858-6983 |

## V.    CONCLUSION

The alleged violations described in this notice of intent to sue are ongoing and violate Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). RISG is in ongoing violation of an effluent standard or limitation as that term is used in the CWA. At the conclusion of the 60-day notice period, NEDC intends to file a lawsuit against Ross Island Sand & Gravel Co. under the citizen suit provision of the Clean Water Act, 33 U.S.C. § 1365, for the violations alleged herein. Each of the above-described violations subjects RISG to a civil penalty and the current maximum daily penalty assessment for each violation is $53,484. In addition to civil penalties, NEDC will seek injunctive relief to prevent further violations and such other relief as is permitted by law, including recovery of NEDC's costs, attorneys' fees, and expert witness fees. *See* 33 U.S.C. §§ 1365(a) and (d).

The above-described violations reflect the information currently available to NEDC. NEDC intends to sue for all violations, including those yet to be uncovered, those committed after the date of this Notice of Intent to Sue, and those occurring at any other properties that are owned or operated by RISG and contiguous or adjacent to the facility. During the 60-day notice period, NEDC will be willing to discuss settlement and effective remedies for the violations alleged in this letter. If you would like to pursue settlement discussions in the absence of litigation, we suggest you initiate discussions within 10 days of receiving this notice so the parties can meet and discuss effective remedies for the violations alleged herein before costs of suit become prohibitive. NEDC does not intend to delay the filing of a complaint if discussions are ongoing when the notice period ends.

| | |
|---|---|
| Crag Law Center | Kampmeier & Knutsen PLLC |
| By: _____ | By: _____ |
| Maura C. Fahey | Paul A. Kampmeier |

*Attorneys for Northwest Environmental Defense Center*

## CERTIFICATE OF SERVICE

I, Maura Fahey, declare under penalty of perjury of the laws of the United States that I am counsel for Northwest Environmental Defense Center and that on April 10, 2019, I caused copies of the foregoing Notice of Intent to Sue Under the Clean Water Act to be served on the following by depositing it with the U.S. Postal Service, postage prepaid, via certified mail, return receipt requested:

| | |
|---|---|
| Managing Agent<br>Ross Island Sand & Gravel Co.<br>4315 S.E. McLoughlin Boulevard<br>Portland, Oregon 97202 | Mr. Randall H. Steed, President<br>Ross Island Sand & Gravel Co.<br>P.O. Box 82249<br>Portland, Oregon 97282 |
| Managing Agent<br>Ross Island Sand & Gravel Co.<br>Tait Plant<br>2611 S.E. 4th Avenue<br>Portland, Oregon 97202 | Mr. Ankur H. Doshi, Registered Agent<br>Ross Island Sand & Gravel Co.<br>6605 SE Lake Rd.<br>Portland, Oregon 97222 |
| Mr. Andrew Wheeler, Administrator<br>U.S. Environmental Protection Agency<br>Office of the Administrator<br>Mail Code: 1101A<br>1200 Pennsylvania Avenue NW<br>Washington, D.C. 20460 | Mr. Chris Hladick, Regional Administrator<br>U.S. Environmental Protection Agency,<br>Region 10<br>Mail Code: RA-210<br>1200 Sixth Avenue<br>Seattle, Washington 98101 |
| Mr. Richard Whitman, Director<br>Oregon Department of Environmental Quality<br>700 N.E. Multnomah Street, Suite 600<br>Portland, Oregon 97232-4100 | |

Executed this 10th day of April, 2019 at Portland, OR .

Maura Fahey