.

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **NORTHWEST ENVIRONMENTAL DEFENSE CENTER**, an Oregon non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>**ROSS ISLAND SAND & GRAVEL COMPANY**, an Oregon corporation<br><br>Defendant. | **Case No. 3:19-cv-00961-AC**<br><br><br>**CONSENT DECREE** |

Plaintiff Northwest Environmental Defense Center ("NEDC" or "Plaintiff") and Defendant Ross Island Sand & Gravel Co. ("RISG" or "Defendant") (collectively the "Parties,") enter into the following Consent Decree:

WHEREAS, Defendant owns and operates an industrial concrete batch plant and aggregate storage facility at or near 2611 S.E. 4th Avenue, Portland, Oregon 97202 (the "Facility"), which discharges pollutants, process wastewater, and stormwater associated with industrial activity via point sources to the Willamette River;

WHEREAS, Defendant does not have a National Pollutant Discharge Elimination System ("NPDES") permit authorizing discharges of pollutants or industrial stormwater from the Facility;

**CONSENT DECREE - 1**

WHEREAS, on April 10, 2019, Plaintiff sent Defendant a letter notifying Defendant of alleged violations of the Clean Water Act and of Plaintiff's intent to sue Defendant for those violations;

WHEREAS, on June 19, 2019, after sending notice to Defendant, the Oregon Department of Environmental Quality ("DEQ") and the U.S. Environmental Protection Agency ("EPA"), Plaintiff filed a Complaint against Defendant alleging violations of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq.*, relating to Defendant's operation of the Facility and seeking declaratory and injunctive relief, civil penalties, costs and expenses and attorneys' fees;

WHEREAS, Defendant denies any fault, wrongdoing, or liability for all claims alleged by Plaintiff in this action;

WHEREAS, Plaintiff and Defendant agree that settlement of these matters is in the best interest of the Parties and the public, and that entry of this Consent Decree without additional litigation is the most appropriate means of resolving this action; and

WHEREAS, Plaintiff and Defendant consent to entry of this Decree without trial, adjudication, or admission of any issue of fact or law with respect to Plaintiff's claims or allegations and without admission of any fact, allegation, or legal argument contained in Plaintiff's sixty (60) day notice of intent to sue or the Complaint in this action.

NOW THERFORE, upon consideration of the mutual promises herein contained, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

I.     JURISDICTION

1.     The Parties agree this Court has jurisdiction over the Parties and the subject matter of this action pursuant to 33 U.S.C. §§ 1251 *et seq.* and 28 U.S.C. §§ 1331, *et seq.*

///

**CONSENT DECREE -** 2

## II.     APPLICABILITY

2.      The undersigned representative for each Party certifies that he or she is fully authorized by the Party whom he or she represents to enter into the terms and conditions of this Consent Decree and to legally bind the Party or Parties and its successors in interest. The Parties certify that this Consent Decree was negotiated in good faith.

3.      This Consent Decree shall apply to, and be binding upon, the Parties and upon their successors and assigns. The provisions of this Consent Decree shall also inure to the benefit of and be binding upon the Parties' officials, officers, directors, employees, successors, and assigns. Changes in the organizational form or status of a party shall have no effect on the binding nature of this Consent Decree or its applicability.

4.      This Consent Decree shall apply to Defendant's operation and/or oversight of the Facility.

## III.     SETTLEMENT AND RELEASE OF CLAIMS

5.      This Consent Decree is intended to be and shall constitute the exclusive remedy and a full and complete settlement of the claims alleged or that could have been alleged in the Complaint under the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*, arising from Defendant's ownership and operations at the Facility.

6.      Defendant represents and warrants that it is capable of satisfying all monetary obligations imposed by this Consent Decree.

7.      This Consent Decree is a settlement of disputed facts and law, and shall not constitute evidence in any proceeding, an admission or adjudication with respect to any matter alleged in or arising out of the Complaint, or admissions or evidence of any wrongdoing or misconduct on the part of the Defendant of any of Defendant's successors.

**CONSENT DECREE -** 3

IV.    DEFENDANT'S OBLIGATIONS

8.    Defendant shall manage the Facility pursuant to the January 15, 2020, Stormwater Management Technical Memorandum ("Technical Memo") attached as Exhibit A to this Consent Decree.

9.    As described in the Technical Memo, Defendant shall maintain a log of all site inspections. Until Defendant has obtained coverage under DEQ's 1200-C general stormwater permit, Defendant shall provide Plaintiff a copy of the inspection log for the preceding month within fourteen (14) days of the end of each calendar month.

10.    Within thirty (30) days of the entry of this Consent Decree, Defendant shall cease the following activities at the Facility: the transfer or movement of aggregate materials including barge loading and unloading, trucking, and on-site loading; concrete manufacturing or production; packaging or direct sale of concrete products, aggregate materials or roofing granules; trucking or transport associated with materials or product sales other than as needed to remove materials or products that remain in the warehouse at the Facility; and any other activity associated with the operation of Defendant's concrete manufacturing and roofing granule businesses.

11.    As described in the Technical Memorandum, within thirty (60) days of entry of this Consent Decree, Defendant shall sweep or otherwise clear areas of the Facility where Defendant has previously stored or stockpiled aggregate material, sand, or roofing granules, including those areas of the Facility site that are directly adjacent to the Willamette River and its banks.

**CONSENT DECREE - 4**

12.     Defendant shall cease any spraying, sprinkling, or other method of land application of stormwater or wastewater collected at the Facility for any purpose, including off-site dust suppression.

13.     As described in the Technical Memorandum, to the maximum extent practicable, Defendant shall capture stormwater that could discharge from the Facility into the Willamette River, store it in the sumps at the northern end of the Facility, and pump the stormwater into the City of Portland ("City") sanitary sewer, per the terms of the City's Batch Discharge Permit issued to Defendant on December 17, 2019, as needed to ensure the sumps do not overflow into the Willamette River.  Defendants obligations in this regard shall continue unless and until alternative stormwater management is authorized by a DEQ-approved NPDES permit.

14.     Within forty-five (45) days of the entry of this Consent Decree, as described in the Technical Memorandum, Defendant shall implement Alternative 2 to manage stormwater at the site.  Defendant shall operate the Pump Stations such that stormwater collected in those basins--runoff from Drainage Areas 2, 3, 4, and 6, as identified in Exhibit A--does not overflow into the Willamette River but rather is pumped to the sumps per the requirements in Paragraph 13, above. Once completed, Defendant shall certify in writing to Plaintiff that Alternative 2 has been implemented, including providing Plaintiff with photographs of the completed system.

15.     Within thirty (30) days of completion of all actions required by Paragraphs 8 through 14, Defendants shall provide Plaintiff access to the Facility for a site visit to observe the completed actions and site conditions. Plaintiff, or Plaintiff's expert, shall be permitted to take photographs of the Facility during the site visit.

16.     Prior to beginning any activities to deconstruct, dismantle, or demolish any structures or equipment at the Facility, Defendant shall obtain coverage under the DEQ's 1200-C

**CONSENT DECREE - 5**

NPDES Stormwater Discharge Permit for construction activities and secure all necessary authorizations from the Portland Bureau of Environmental Services ("BES").

17.     If and when Defendant obtains coverage under DEQ's 1200-C NPDES Permit, Defendant's Short-Term Stormwater Management obligations described in the Technical Memorandum and in Paragraph 13 will terminate and management of the Facility shall be in compliance with the terms and conditions of the NPDES Permit and DEQ-approved Stormwater Pollution Control Plan.

## V.     SUPPLEMENTAL ENVIRONMENTAL PROJECT

18.     In lieu of a penalty, Defendant shall make a payment in the amount of $50,000 to the Johnson Creek Watershed Council for a habitat restoration project on Johnson Creek at River Mile 0.5 as described in Exhibit B. Payment shall be made to Johnson Creek Watershed Council no later than July 1, 2020. Defendant shall provide a copy of the check or payment to Plaintiff at the time payment is made.

## VI.     ATTORNEYS' FEES AND COSTS

19.     Defendant shall pay Plaintiff's reasonable attorneys' fees and costs in the amount of One Hundred Sixty-Eight Thousand, Eight Hundred and Seventy-Eight Dollars ($168,878.00). Within twenty (20) days of the effective date of this Consent Decree, Defendant shall make an initial payment of thirty thousand dollars ($30,000). Defendant shall make a second payment for the remaining One Hundred and Thirty-Eight Thousand, Eight Hundred and Seventy-Eight Dollars ($138,878.00) no later than July 1, 2020. Payments shall be made by check payable and mailed to Crag Law Center, 3141 E Burnside Street, Portland, Oregon 97214, Attn: Maura Fahey. These payments shall constitute full and complete satisfaction of any claims Plaintiff may have under the Clean Water Act for attorneys' fees and costs in this case, through the date of

**CONSENT DECREE - 6**

entry of this Consent Decree. Contemporaneous with this Consent Decree, Defendant's parent

company, R.B. Pamplin Corp., has provided a promissory note to Plaintiff to guarantee the

second payment.

VII.    TERM AND CONTINUING JURISDICTION

20.    The Court shall retain jurisdiction over this matter until termination of this

Consent Decree as provided in Paragraph 21 and allow this case to be reopened without a filing

fee for the purpose of allowing the parties to apply to the Court for any further order that may be

necessary to construe, carry out, enforce compliance with, and/or resolve any dispute regarding

the terms and conditions of this Consent Decree. In the event of a dispute regarding

implementation of, or compliance with, this Consent Decree, the Parties shall first attempt to

informally resolve the dispute through meetings between the Parties by either Party serving

written notice of request for resolution to the other Party and their counsel of record. If no

resolution is reached within thirty (30) days from the date that the notice of dispute is served, the

Parties may resolve the dispute by filing motions with the Court.

21.    The Consent Decree takes effect on the date it is entered by the Court. This

Consent Decree shall terminate sixty (60) days after (1) Defendant obtains coverage under the

1200-C NPDES permit, or (2) Defendant satisfies all obligations set forth in Paragraphs 10, 11,

14, 15, 18 and 19, whichever occurs later.

VIII.    GENERAL PROVISIONS

22.    The Parties recognize that no consent decree can be entered in a Clean Water Act

suit in which the United States is not a party prior to forty-five (45) days following the receipt of

a copy of the proposed consent decree by the United States Attorney General and the

Administrator of the United States Environmental Protection Agency pursuant to 33 U.S.C. §

**CONSENT DECREE - 7**

1365(c)(3). Therefore, upon the signing of this Consent Decree by the Parties, Plaintiff shall serve copies of the Consent Decree upon the United States Attorney General and the Administrator of the United States Environmental Protection Agency.

23.     This Consent Decree may be modified only upon the written consent of the Parties and the approval of the Court.

24.     If for any reason the Court should decline to approve this Consent Decree in the form presented, this Consent Decree and the settlement embodied herein shall be voidable at the discretion of any Party. The Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Consent Decree.

25.     Notification to any Party under this Consent Decree will be deemed submitted on the date it is postmarked (with delivery receipt). Notifications or copies required by this Consent Decree to be made to Plaintiff shall be mailed to: Northwest Environmental Defense Center, Attn: Mark Riskedahl, 10015 S.W. Terwilliger Blvd, Portland, Oregon, 97219. Notifications required by this Consent Decree to be made to Defendant shall be mailed to: Ross Island Sand & Gravel Co., Attn: Magali Sosa-Tirado, PO Box 22109, Portland OR 97269-2109.  Upon reasonable notice, any Party may substitute a new name and address for the purpose of this paragraph of this Consent Decree.

IX.    ORDER

26.     Upon consideration of the foregoing, this Court finds that this Consent Decree is fair and reasonable, both procedurally and substantively, consistent with applicable law, in good faith, and in the public interest. This Consent Decree is approved and will constitute the final judgment between the Parties. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58. This Court retains

**CONSENT DECREE - 8**

jurisdiction over both the subject matter of this Consent Decree and the Parties for the duration
of this Consent Decree.

IT IS SO ORDERED THIS _2nd_ DAY of _April_ 2020.

John V. Acosta
United States Magistrate Judge

DATED: January 31, 2020

CRAG LAW CENTER                          STOEL RIVES LLP

/s/ Maura C. Fahey                       /s/ Crystal S. Chase
MAURA C. FAHEY, OSB No. 133549           AARON C. COURTNEY, OSB No. 935252
maura@crag.org                           aaron.courtney@stoel.com
3141 E Burnside St.                      CRYSTAL S. CHASE, OSB No. 093104
Portland, Oregon 97214                   crystal.chase@stoel.com
Telephone:  503.525.2722                 760 SW Ninth Avenue, Suite 3000
Fax: 503-296-5454                        Portland, Oregon 97205
                                         Telephone:  503.224.3380
                                         Fax: 503-220-2480
Attorneys for Plaintiff Northwest
    Environmental Defense Center          Attorneys for Defendant Ross Island Sand &
                                             Gravel Company

**CONSENT DECREE - 9**

The UNDERSIGNED PARTIES enter into this Consent Decree:

FOR DEFENDANT ROSS ISLAND SAND & GRAVEL CO.

By: _____ Date: 1-31-2020
Executive Vice President
Ross Island sand & Gravel Co.
4315 SE McLoughlin Blvd.
Portland, Oregon 97202

_____ Date: 1/31/20
Stoel Rives, LLP
760 SW Ninth Ave., Suite 3000
Portland, OR 97205
Counsel for Ross Island Sand & Gravel, Co.

FOR PLAINTIFF NORTHWEST ENVIRONMENTAL DEFENSE CENTER

By: _____ Date: 1/31/20
Executive Director
Northwest Environmental Defense Center
10015 SW Terwilliger Blvd.
Portland, OR 97219

_____ Date: 1/31/2020
Crag Law Center
3141 E Burnside Street
Portland, OR 97214
Counsel for NEDC

**CONSENT DECREE - 10**